## Daniel McLafferty et al., Plffs. in Err., *v.* Hugh Sweeney.

The action of a corporation, if in a regular manner, in expelling a member is final and conclusive until reversed by a judgment of the common pleas.

It is the duty of a member so expelled to serve on the officers of the corporation, before attempting again to participate in the proceedings of the corporation, a decree of the common pleas establishing his rights.

If without serving such a decree he insists on participating in the proceedings of the corporation, after he has been requested by vote to retire, he may be ejected by force, and cannot maintain against the members (who eject him without using more force than is necessary) an action of trespass on the case for conspiracy.

It is immaterial that one of the officers of the corporation, who is present at the member's ejection but takes no part therein, knows of the decree of the common pleas reinstating the member.

(Argued April 6, 1887. Decided April 25, 1887.)

January Term, 1887, No. 274, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to Common Pleas No. 1 of Philadelphia County to review a judgment on a verdict for the plaintiff in an action of trespass on the case. Reversed.

The declaration was as follows:

Daniel McLafferty, Dennis McDevitt, Hugh Peyton, Charles Fay, Patrick McCormick, Thomas Caton, Charles Aikins, and Patrick O'Brien were summoned to answer Hugh Sweeney of a plea of trespass on the case; whereupon, the said plaintiff, by Richard P. White, his attorney, complains, for that whereas the said plaintiff, heretofore, to wit: on the first day of April, 1884, at the county aforesaid, was member of a certain beneficial society named, to wit, the Rev. Hugh McLaughlin Beneficial Association, and as such member, under the laws and rules thereof, was entitled to receive certain benefit and payments in case of his sickness, and the said defendants did then and there

conspire, combine, confederate, and agree together, unlawfully and unjustly, to expel the said plaintiff from the said society and to deprive him of his rights and membership thereof, and of the payments due and which were to fall due to him from the said society by reason of his sickness. And the said defendants in the pursuance of the said unlawful and wicked conspiracy, combination, confederacy and agreement, and for carrying the same into effect, did afterwards, to wit, on the day and year last aforesaid, took, pushed, and shoved the said plaintiff, and caused and procured the said plaintiff to be taken, pushed, and shoved from a certain room in which the said plaintiff was present at a meeting of the said society; hindered, prevented, and totally excluded the said plaintiff from that time to again enter the said room and from attending or being present at the said meeting and the subsequent meetings of the said society, and hindered and prevented the said plaintiff from claiming, having, or obtaining any benefits and payments from the said society by reason of his said membership and sickness.

By means of which several premises the said plaintiff has lost and been deprived of his rights and privileges of attending and being present at the meetings of said society, and of having and receiving sick benefits and payments from the said society. And other wrongs to the said plaintiff then and there did, to the damage of the said plaintiff $5,000; therefore he brings suit.

The defendants pleaded not guilty.

At the trial before PIERCE, J., the following facts appeared:

Plaintiff joined the "Rev. Hugh McLaughlin Beneficial Society" in 1869, and prior to 1880 had been drawing frequent benefits from the society. In 1880 he claimed to be sick again, and the stewards, whose business it was, visited him, and after paying him one week's benefits ($5) declined to pay him any more, because, as they alleged, they could see nothing the matter with him, and he declined to show them a certificate which he claimed Dr. Thomas G. Morton had given him. The stewards reported to the society adversely to plaintiff's claim for benefits. He then went to counsel, who in September, 1880, sent a claim to the society for $35, being seven weeks' benefits at $5 per week. Thereafter on September 7, 1880, the society voted to request plaintiff to arbitrate, and notified him of it the next day; but he declined to arbitrate.

His claim not having been paid, suit was brought by him against the society before a magistrate, and judgment obtained October 4, 1880, from which an appeal was taken to the court of common pleas.

April 5, 1881, John H. Kirk, a member, made a charge against Sweeney that he had violated the by-laws of the society by not having an arbitration to settle his dispute with the society before going to law; and May 10, 1881, a special meeting of the society was called to consider the charge, at which meeting Sweeney was present and took part—the vote on expulsion being 116 in favor to 29 against it.

January 6, 1882, the appeal was tried in the court of common pleas, before BIDDLE, J., and a nonsuit was entered, on the ground that plaintiff should have complied with the by-laws as to arbitration before bringing suit.

After the nonsuit in 1882 he alleges that he was ready to arbitrate; but as in the meantime he had been expelled, the society did not consider him a member.

In September, 1882, he filed a petition for a mandamus in common pleas No. 3 against the society, which it answered, to which answer a demurrer was filed. On March 24, 1884, judgment was entered for the relator on the demurrer.

On April 1, 1884, a regular meeting of the society was being held, when plaintiff and a stranger were discovered to be present. The secretary announced that he had business of importance to lay before the meeting, but could not do so as long as persons were present who were not members; whereupon, the stranger left. Plaintiff said he was as good a member as anyone present, and refused to leave. He now asserts that he said in a loud voice that the court had so decided. In this statement he is contradicted by almost every other witness. However, he did not show any authority of any kind from the court. No one present in the room knew of any decision of the court, except the secretary, and he has not been made a defendant. Plaintiff persisted in remaining. A member then offered a resolution as follows:

Whereas Hugh Sweeney appeared in this hall and claimed to be a member of this society, without any authority being shown by him for such claim, and having been requested by the president to leave the hall and Mr. Sweeney's refusal to do so,

Resolved, that the president requests the assistance of police officers to put Sweeney out of the hall.

This resolution was agreed to, and in pursuance of it the president, McLafferty, requested the doorkeeper to call in an officer, who laid his hand on Sweeney's shoulder and told him to go out, which he did.

After plaintiff was put out the secretary read a communication from the counsel of the society which stated that No. 3 court had decided to reinstate plaintiff, and which further advised an appeal to the supreme court. By a resolution the society decided to follow the advice of counsel and an appeal was taken.

In May, 1885, the supreme court affirmed the decree of the common pleas, and plaintiff then took a certificate of the decree to the society. Counsel advised the society that plaintiff was compelled to pay back dues before reinstatement; and when the president and secretary told plaintiff what counsel had advised, and that he must pay the back dues or they could not reinstate him, he procured an attachment to be issued against them for contempt in not obeying the decree, and they were fined.

Immediately thereafter plaintiff was reinstated by putting his name on the roll as usual, and he has continued a member since.

Of the defendants, Aikins never was a member of the society, and never was present; Thomas Caton was not present on April 1, 1884; Dennis McDevitt did not come in until just before plaintiff was put out.

The court, after reviewing the testimony and calling attention to the action of the defendants for which the action was brought, charged the jury as follows:

Now, you have heard the evidence and it is for you to say whether this was done in pursuance of an unlawful conspiracy on the part of the defendants in this action to deprive him, the plaintiff, of his rights of membership in this society.

[These societies are very beneficial to the poor, to the laboring classes, who most usually take advantage of them, and they ought to be encouraged in the line of their duty; but if they go beyond that and do what they ought not to do, then they are liable for their acts or omissions like other individuals or associations.

In this case it is alleged that he, the plaintiff, refused to ar-

bitrate; and in refusing to do that refused to do his duty; and if these defendants, members of the society, did that which they ought not to have done, the law will visit upon them the damages for their misdoing, for any offense against the rights of a private member.

It is for you to say, however, whether what they did was in the line of their duties as members of the society or whether they went outside of their duties as members of the society to oppress this man. If they did that, then they would be liable for anything not in the line of their duty as members of the society.]

It is charged that the defendants, or this society or some of them, were not only depriving him of his rights as a member but also undertook to find fault with what the court had done. In that instance, however, the court vindicated itself and. imposed a fine.

[There is one feature in the case that strikes me with considerable force; and that is, at the meeting in 1884, I think it was, they then knew or ought to have known that there had been a decision in favor of Mr. Sweeney and which they disregarded. Sweeney says that he told them of this; and it is admitted that the secretary of the society had with him a letter from the counsel for the society, notifying them of the decision of the court of common pleas No. 3; notwithstanding which they undertook to expel him, and did put him out by main force. Even if the secretary had no such notice from the counsel, Sweeney, if you believe him, said enough to put them on inquiry, at least, as to whether he had been sustained in court; but they went right ahead and put him out—expelled him.]

The defendants submitted, *inter alia,* the following points:

2. "There is no evidence in this case of any illegal combination between the defendants."

3. "Under all the evidence the verdict should be for the defendants."

After refusing these points the court added: "[Mr. White calls my attention to the fact that I have said nothing about punitive damages; that I intended to embrace that subject. If you are satisfied that the plaintiff was expelled improperly, you can visit upon the defendants what in the law are known as punitive damages; not simply compensatory damages, but done to punish the defendants; that is, if the act done wilfully and maliciously.]"

Verdict and judgment were for the plaintiff for $449.50.

The assignments of error specified the portions of the charge inclosed in brackets, the refusal of the points quoted, and the action of the court in admitting in evidence for plaintiff the record of the mandamus case, and in admitting in evidence for plaintiff facts before and after April 1, 1884, the date laid in the *narr.*

*Mann & Miles,* *Thomas P. Judge,* and *E. Cooper Shapley,* for plaintiffs in error.—An action does not lie against individuals for acts erroneously done by them in a corporate capacity, from which detriment happens to the plaintiff.    Harman v. Tappenden, 1 East, 555.

If an individual stockholder has suffered damages in a contract with the corporation, through the fraudulent and illegal acts of the directors, done by color of their office, his only remedy is against the corporation.    Smith v. Poor, 40 Me. 415, 63 Am. Dec. 672; Hilliard, Torts, 419.

Many acts which, if productive of harm to a single person, are mere torts, become crimes when they result in damage to a large number of persons; and all proceedings which are invasions of the rights or privileges, not of some one individual specially, but of the public at large, or which are detrimental to the general well-being or to the interests of the state, similarly fall under the category of crimes.    Green's Brice, Ultra Vires, 272, Citing 1 Bennett, Lead. Crim. Cas. p. 174.

Under the principle of Hyatt v. Johnston, 91 Pa. 196, and many similar cases, the court should not have sent the case to the jury.    See also Newall v. Jenkins, 26 Pa. 159; Gaunce v. Backhouse, 37 Pa. 350; Kirkpatrick v. Lex, 49 Pa. 122.

In order to recover damages in an action on the case for a conspiracy, a criminal intent must be proved to exist in the minds of all the defendants.    A transaction, honest in fact yet against legal policy, would not constitute a conspiracy.    Biever v. Herr, 1 Pearson (Pa.) 510.

Admitting the record of the mandamus case was error.

It is a record between Sweeney as plaintiff and the corporation as defendant, and is therefore between third parties, and cannot bind defendants.

If it shows anything, it is that this action should be against the corporation, and not against the individual members.

A great distinction exists between tortious and contractual liability for acts *ultra vires*. It is no defense to legal proceedings in tort that the torts were *ultra vires*. If the torts have been done by the corporation, or by their direction, they are liable for the results, however much in excess of their powers such torts may be. Green's Brice, Ultra Vires, 265, Citing Sharp v. New York, 40 Barb. 273; Salt Lake City v. Hollister, 118 U. S. 256, 30 L. ed. 176, 6 Sup. Ct. Rep. 1055.

Admitting evidence of facts before and after April 1, 1884, was error.

The *narr.* averred one date only, *viz.,* April 1, 1884. As this is a quasi criminal action, plaintiff should have been confined to his *narr.* In any event, facts subsequent to the date laid should not have been admitted.

This is not similar to a case where the *narr.* charges the occurrences as having happened between two dates.

The *narr.* charges one specific act at a meeting of the society on a certain date. Defendants were entitled to know what they would have to meet. To allow evidence as to other dates and other acts is to mislead defendants.

*Thomas E. White, George H. Earle, Jr.,* and *Richard P. White,* for defendant in error.—Parties who by concerted action prevent a citizen from obtaining the fruits of a decision of the courts are personally liable to him. Findlay v. McAllister, 113 U. S. 104, 28 L. ed. 930, 5 Sup. Ct. Rep. 401.

If a wrongdoer in fact had authority from a corporation so to act, both are liable. Bates v. Pilling, 6 Barn. & C. 38.

Any other rule would be absurd; for the law would indeed be easily evaded, if wrongdoers must escape by simply announcing that they intended to commit their torts for others.

Where a state official invades the rights of a citizen under the express mandate of that state's law, he is liable as a trespasser, unless he can establish the state's constitutional right to pass the law. Poindexter v. Greenhow, 114 U. S. 282, 29 L. ed. 190, 5 Sup. Ct. Rep. 903, 962.

While the continued, joint, persistent, and known invasion of the plaintiff's rights by the defendants is ample evidence that they conspired to so injure him, it is settled that the gist of actions of conspiracy is the wrong done; and proof of the con-

spiracy is only essential as to defendants who took no other part in the perpetration of that wrong, further than combining to commit it; and as the direct participation of each of the defendants has been shown, the question of conspiracy becomes of but little moment, although largely discussed by defendants. Laverty v. Vanarsdale, 65 Pa. 507.

OPINION BY MR. JUSTICE GORDON:

The testimony adduced by the plaintiff in the court below, and as we have it now before us, exhibits no cause of action against the defendants. There is not the slightest evidence of a conspiracy to deprive him of the rights and benefits of the association to which he belonged. He was expelled in a regular manner, and by the decisive majority of 90 in a vote of 116.

The action was that of the corporation, and was final and conclusive, until reversed by the judgment of the court of common pleas. When that court gave its judgment in his favor on the mandamus, it was his business to serve the decree, in a regular manner, on the officers of the society; and if in that case they did not restore him, he had his remedy by attachment, which, it seems, he finally resorted to.

But when he appeared at the April meeting, he appeared, so far as the association knew, as an intruder without right, and on being requested, as he was, by a vote of the members then present, to retire, he should have quietly obeyed; and not having done so, he made himself liable to forcible expulsion. His declaration that he had been restored by the judgment of the court, even if heard by a majority of those present, was not the kind of information that they were bound to regard; they had a right to require the production of the order of the court; and even after that, they were entitled to a reasonable time for its consideration, and for that purpose might well have ordered him to retire from the lodge room.

Instead of pursuing this regular and quiet course, he chose to intrude himself on the society and attempt his own restoration in a manner which accorded rather with his own will than with propriety and law. The result of his experiment is on himself; fortunately, it was not at all serious; and as he was finally restored to his membership he has nothing of which to complain. But had the result been more serious than it was, it could not have been visited on the defendants, since they did nothing in

the transaction but what they were warranted to do in the exercise of their corporate rights.

The judgment of the court below is now reversed and set aside.